Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MORRIS,<br><br>    Plaintiff,<br><br>v.<br><br>NEW SENIOR INVESTMENT GROUP INC., FRANCES ALDRICH SEVILLA-SACASA, SUSAN GIVENS, NORMAN K. JENKINS, MICHAEL D. MALONE, DAVID MILNER, ROBERT F. SAVAGE, and CASSIA VAN DER HOOF HOLSTEIN,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Michael Morris ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.    This is an action against New Senior Investment Group Inc. ("New Senior" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of New Senior by Ventas, Inc. ("Ventas") and Cadence Merger Sub LLC, a subsidiary of Ventas.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company is headquartered in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of New Senior common stock.

7. Defendant New Senior is a publicly-traded real estate investment trust with a diversified portfolio of senior housing properties located across the United States. The Company

is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SNR."

8. Defendant Frances Aldrich Sevilla-Sacasa ("Sevilla-Sacasa") is a director of the Company.

9. Defendant Susan Givens ("Givens") is President, Chief Executive Officer, and a director of the Company.

10. Defendant Norman K. Jenkins ("Jenkins") is a director of the Company.

11. Defendant Michael D. Malone ("Malone") is a director of the Company.

12. Defendant David Milner ("Milner") is a director of the Company.

13. Defendant Robert F. Savage ("Savage") is Chairman of the Board of the Company.

14. Defendant Cassia van der Hoof Holstein ("Holstein") is a director of the Company.

15. Defendants Sevilla-Sacasa, Givens, Jenkins, Malone, Milner, Savage, and Holstein are collectively referred to herein as the "Individual Defendants."

16. Defendants New Senior and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On June 28, 2021, New Senior and Ventas announced that they had entered into a definitive merger agreement pursuant to which Ventas would acquire New Senior in an all-stock transaction. Under the terms of the agreement, New Senior shareholders will receive 0.1561 shares of newly issued Ventas stock per share of New Senior common stock. The press release announcing the Proposed Transaction states, in pertinent part:

3

**Ventas to Acquire New Senior Investment Group in All Equity $2.3 Billion Transaction**

*Positions Ventas to capture powerful senior housing upside at cyclical inflection point*

*Adds high quality independent living portfolio in advantaged markets with positive supply demand fundamentals*

*Builds on existing relationships with leading operators and deep experience in independent living*

*Attractive valuation and accretive transaction*

June 28, 2021 09:02 AM Eastern Daylight Time

CHICAGO & NEW YORK--(BUSINESS WIRE)--Ventas, Inc. (NYSE: VTR) ("Ventas") and New Senior Investment Group Inc. (NYSE: SNR) ("New Senior") today announced that they have entered into a definitive merger agreement pursuant to which Ventas will acquire New Senior in an all-stock transaction (the "Transaction"), valued at approximately $2.3 billion, including $1.5 billion of New Senior debt.

New Senior has a high-quality, geographically diversified portfolio of 103 private pay senior living communities, including 102 independent living communities, totaling 12,404 units and located across 36 states in the United States.

Under the terms of the agreement, New Senior shareholders will receive 0.1561 shares of newly issued Ventas stock per share of New Senior common stock. Based on the closing price of Ventas common stock on June 25, 2021, this represents approximately $9.10 per New Senior share, a 31% equity premium based on New Senior's 30-day trading average, and a 10% premium on New Senior's total enterprise value.

The Transaction valuation is expected to represent approximately a 6% capitalization rate on expected New Senior 2022 Net Operating Income ("NOI") and is expected to be approximately $0.09 to $0.11 accretive to Ventas's normalized funds from operations per share on a full year basis.

\*   \*   \*

**Approvals, Timing and Dividends**

The Transaction is expected to close during the second half of 2021, subject to customary closing conditions, including approval by the common shareholders of New Senior. The Companies have agreed to synchronize the record and payment

dates for their dividends, which are expected to remain at their current levels prior to the closing of the Transaction, subject to approval of their respective Boards of Directors, on the dates typically used by Ventas.

The Board of Directors of both companies have unanimously approved the Transaction.

**Advisors**

Centerview Partners LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Ventas. Morgan Stanley & Co. LLC is serving as financial advisor and Cravath, Swaine & Moore LLP is acting as legal advisor to New Senior.

**Investor Presentation**

A presentation detailing the Transaction and providing a business update is posted to the Events & Presentations section of Ventas's website at ir.ventasreit.com/events-and-presentations.

**About Ventas**

Ventas, an S&P 500 company, operates at the intersection of two powerful and dynamic industries – healthcare and real estate. As one of the world's foremost Real Estate Investment Trusts (REIT), we use the power of capital to unlock the value of real estate, partnering with leading care providers, developers, research and medical institutions, innovators and healthcare organizations whose success is buoyed by the demographic tailwind of an aging population. For more than twenty years, Ventas has followed a successful strategy that endures: combining a high-quality diversified portfolio of properties and capital sources to manage through cycles, working with industry leading partners, and a collaborative and experienced team focused on producing consistent growing cash flows and superior returns on a strong balance sheet, ultimately rewarding Ventas stakeholders. As of March 31, 2021, Ventas owned or had investments in approximately 1,200 properties.

**About New Senior**

New Senior Investment Group Inc. (NYSE: SNR) is a publicly-traded real estate investment trust with a diversified portfolio of senior housing properties located across the United States. New Senior is one of the largest owners of senior housing properties, with 103 properties across 36 states.

18.  On July 26, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in

connection with the Proposed Transaction.

    **B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

    19.    The Registration Statement, which recommends that New Senior shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) New Senior's and Ventas' financial projections; (ii) the financial analyses performed by New Senior's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Morgan Stanley; and (iv) the sales process leading up to the Proposed Transaction.

    20.    The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the New Senior Board; New Senior's Reasons for the Merger; (iii) Opinion of New Senior's Financial Advisor; and (iv) Certain New Senior Forecasts.

    21.    Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, New Senior shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

    **1. Material Omissions Concerning New Senior's and Ventas' Financial Projections**

    22.    The Registration Statement omits material information concerning New Senior's and Ventas' financial projections.

    23.    The Registration Statement provides that, in connection with its fairness opinion, "Morgan Stanley . . . discussed the . . . current operations and financial condition and the prospects of Ventas with senior executives of Ventas[.]" *See* Registration Statement at 45.

24.     Yet, the Registration Statement fails to disclose Ventas' financial projections. This information is material as New Senior shareholders are expected to own a percentage of the combined company, but without Ventas' financial projections, the Company's shareholders cannot adequately evaluate and assess the value of Ventas or the combined company.

25.     With respect to the "Forecasts," the Registration Statement fails to disclose: (1) all line items underlying (i) Total Cash Revenue, (ii) Cash NOI, (iii) Normalized Funds From Operations; and (iv) Adjusted Funds From Operations; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or

7

released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Morgan Stanley's Analyses**

29. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Morgan Stanley.

30. The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Dividend Discount Analysis*": (1) the projected terminal value of New Senior common stock as of December 31, 2024; and (2) the individual inputs and assumptions underlying the (i) range of terminal NFFO multiples of 10.0x to 12.0x, and (ii) range of discount rates of 9.7% to 11.7%.

31. With respect to Morgan Stanley's "*Private Levered Buyer Analysis*," the Registration Statement fails to disclose the individual inputs and assumptions underlying the (i) terminal capitalization rate range of 6.5% to 7.0%, and (ii) target range of annualized internal rates of return for the financial sponsor of 15% to 20%.

32. The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Broker Price Targets Analysis for New Senior*," "*Broker Price NAV per Share Analysis*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 3, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

8

*for New Senior,*" "*Broker Price Targets Analysis for Ventas,*" and "*Broker Price NAV per Share Analysis for Ventas*": (1) the individual price targets and NAV estimates observed by Morgan Stanley in its analyses; and (2) the sources thereof.

33. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to New Senior shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, New Senior shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

34. The Registration Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

35. The Registration Statement provides that "New Senior has agreed to pay Morgan Stanley . . . an additional discretionary fee of up to approximately $6 million, payable, if at all, at the New Senior Board's sole discretion on or before the closing." The Registration Statement, however, fails to disclose the circumstances under which Morgan Stanley may receive "an additional discretionary fee of up to approximately $6 million, payable, if at all, at the New Senior Board's sole discretion on or before the closing," and whether the Company intends to pay Morgan Stanley such a fee.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest

9

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

38. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

39. The Registration Statement provides that, "[o]n March 29, 2021, New Senior and Party A had entered into a mutual confidentiality agreement."

40. The Registration Statement, however, fails to disclose the terms of the Company's confidentiality agreement with Party A, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Party A from making a superior offer for the Company.

41. Without this information, New Senior shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable New Senior shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

46. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

53. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 3, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*